UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 24-1030 _____          _____ Caption [use short title] _____

Motion for: leave to file a reply in support of the petition for

permission to appeal pursuant to Fed. R. Civ. P. 23(f)

_____

Set forth below precise, complete statement of relief sought:

Plaintiff-Petitioner seeks leave to file a reply in further

support of the Rule 23(f) petition for permission to appeal          IN RE: KIRKLAND GOLD LTD. SECURITIES LITIGATION

the District Court's order denying class certification

_____

_____

_____

MOVING PARTY: Stephen Brahms _____          OPPOSING PARTY: Anthony P. Makuch, Kirkland Lake Gold Ltd.

   ☑ Plaintiff      ☐ Defendant

   ☑ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Danie Woofter _____          OPPOSING ATTORNEY: Audra J. Soloway, Joshua Hill Jr.
[name of attorney, with firm, address, phone number and e-mail]

Goldstein, Russell & Woofter LLC          Paul, Weiss, Rifkind, Wharton & Garrison LLP

1701 Pennsylvania Ave. NW, Suite 200, Washington, DC 20006          1285 Avenue of the Americas, New York, NY 10019

(202) 240-8433 dhwoofter@gmail.com          (212) 373-3289 asoloway@paulweiss.com, (628) 432-5123 jhill@paulweiss.com

Court- Judge/ Agency appealed from: The Honorable J. Paul Oetken, U.S. District Court for the Southern District of New York

Please check appropriate boxes:                                          FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                                                          INJUNCTIONS PENDING APPEAL:
Has movant notified opposing counsel (required by Local Rule 27.1):      Has this request for relief been made below?          ☐ Yes ☐ No
   ☑ Yes  ☐ No (explain):_____          Has this relief been previously sought in this court?   ☐ Yes ☐ No
   _____          Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:                                   _____
   ☐ Unopposed ☐ Opposed ☑ Don't Know                 _____
Does opposing counsel intend to file a response:                         _____
   ☐ Yes  ☐ No  ☑ Don't Know         _____

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date:_____

Signature of Moving Attorney:

/s/ Daniel Woofter _____ Date: April 29, 2024     Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

# No. 24-1030

## United States Court of Appeals for the Second Circuit

IN RE: KIRKLAND GOLD LTD. SECURITIES LITIGATION

---------------------------------------------------------------------

STEPHEN BRAHMS, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED,

*Petitioner*,

v.

ANTHONY P. MAKUCH, KIRKLAND LAKE GOLD LTD.,

*Respondents*.

From an order denying certification of a class entered on March 29,
2024 by the U.S. District Court for the Southern District of New York
(No. 1:20-cv-04953-JPO)
The Honorable J. Paul Oetken

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF HIS RULE 23(f) PETITION

Christian Levis
LOWEY DANNENBERG, P.C.
44 South Broadway
Suite 1100
White Plains, NY 10601
(914) 997-0500

Daniel Woofter
Kevin K. Russell
GOLDSTEIN, RUSSELL &
  WOOFTER LLC
1701 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Petitioner*

Pursuant to Federal Rule of Appellate Procedure 27, Plaintiff-Petitioner respectfully requests leave to file a reply brief of fewer than 2,600 words (the "Attachment" to this motion) in support of his Petition for permission to appeal pursuant to Federal Rule of Civil Procedure 23(f) from the March 29, 2024 Order of the U.S. District Court for the Southern District of New York (Oetken, J.) denying certification of a class in the above-captioned action. Plaintiff shared a nearly identical draft of this motion for leave to reply, seeking Defendants-Respondents' consent. Defendants' counsel responded that they needed to see the Reply brief itself before deciding whether to oppose the motion, which Plaintiff would not provide, so they "advised that Defendants would determine whether to oppose the motion after having an opportunity (not yet afforded) to review the motion seeking leave to file a reply and the accompanying reply brief itself."

While the Federal Rules of Appellate Procedure do not specifically address the filing of a reply in support of a Rule 23(f) petition, the Rules provide that the party seeking relief typically has an opportunity to reply to any opposition to the relief being sought. *See, e.g.*, Fed. R. App. P. 27(a)(4) (permitting reply in support of a motion); Fed. R. App. P. 28(c)

(same). Accordingly, this Court has frequently accepted replies in support of Rule 23(f) petitions, including when the filing of a reply was opposed. *See, e.g.*, *Chery v. Conduent Educ. Servs., LLC*, No. 21-1312, ECF No. 45 (2d Cir. July 26, 2021); *Blackberry Ltd. v. Pearlstein*, No. 21-243, ECF No. 80 (2d Cir. June 23, 2021); *Lerman v. Apple, Inc.*, No. 20-3627, ECF No. 60 (2d Cir. Feb. 19, 2021); *In re Chi. Bridge & Iron*, No. 20-1162, ECF No. 68 (2d Cir. Aug. 11, 2020); *In re Grupo Televisa Sec. Litig.*, No. 20-2210, ECF No. 64 (2d Cir. Oct. 6, 2020); *In re Signet Jewelers Ltd.*, No. 19-2268, ECF No. 80 (2d Cir. Nov. 19, 2019); *Famular v. Whirlpool Corp.*, No. 19-838, ECF No. 37 (2d Cir. Aug. 6, 2019); *In re Deutsche Bank AG*, No. 18-3036, ECF No. 40 (2d Cir. Feb. 20, 2019).

Plaintiff's proposed Reply responds to issues raised in Defendants' opposition and is intended to aid the Court's decision-making by addressing the opposition's legal arguments. Among other items, the Reply addresses the opposition's misapplication of controlling Supreme Court and Second Circuit precedents that are central to the Rule 23(f) Petition. Plaintiff respectfully requests that the Court grant this motion and consider the attached Reply in reviewing the Petition.

Dated: April 29, 2024

Christian Levis
LOWEY DANNENBERG P.C.
44 South Broadway
White Plains, NY 10601
14) 997-0500

Respectfully submitted,

/s/ Daniel Woofter

Daniel Woofter
Kevin K. Russell
GOLDSTEIN, RUSSELL &
  WOOFTER LLC
1701 Pennsylvania Ave. NW
Suite 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Petitioner*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d) because this document contains 424 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Office 365 Word in 14-point New Century Schoolbook LT Standard font.

Dated: April 29, 2024       /s/ Daniel Woofter
                                    Daniel Woofter

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I caused the above document to be electronically filed with the Clerk of Court of the U.S. Court of Appeals for the Second Circuit by using the appellate ACMS system. I certify that all participants in this case are registered users of that system, and that service will be accomplished by that system.

Dated: April 29, 2024       ____/s/ Daniel Woofter____

                                             Daniel Woofter

ATTACHMENT

# No. 24-1030

## United States Court of Appeals for the Second Circuit

IN RE: KIRKLAND GOLD LTD. SECURITIES LITIGATION

--------------------------------------------------------------------

STEPHEN BRAHMS, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED,

*Petitioner*,

v.

ANTHONY P. MAKUCH, KIRKLAND LAKE GOLD LTD.,

*Respondents*.

From an order denying certification of a class entered on March 29,
2024 by the U.S. District Court for the Southern District of New York
(No. 1:20-cv-04953-JPO)
The Honorable J. Paul Oetken

## PLAINTIFF'S REPLY IN SUPPORT OF RULE 23(f) PETITION

Christian Levis
LOWEY DANNENBERG, P.C.
44 South Broadway
Suite 1100
White Plains, NY 10601
(914) 997-0500

Daniel Woofter
Kevin K. Russell
GOLDSTEIN, RUSSELL &
    WOOFTER LLC
1701 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ii

INTRODUCTION ................................................................ 1

ARGUMENT ..................................................................... 3

    I.   This Court Should Grant Interlocutory Review to Decide Whether a District Court May Deny Class Certification Because It Believes the Defendant's Statements Were Truthful and Thus Had No Price Impact. ................................ 3

    II.  This Court Should Grant Interlocutory Review to Provide Guidance on When a Statement Is Sufficiently Generic to Trigger Goldman IV's "Searching Price Impact Analysis." ..... 7

    III. Defendants' Other Arguments Lack Merit. ......................... 11

CONCLUSION .................................................................. 13

i

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ................................................................. 3

*Arkansas Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) .................................... 1, 2, 4, 5, 6, 7, 8, 9, 10

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
    594 U.S. 113 (2021) ...................................................... 3, 9, 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ............................................................... 9

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ................................................. 8, 9

*Murphy v. Hughson*,
    82 F.4th 177 (2d Cir. 2023) ................................................... 13

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) .......................... 12

*Pelletier v. Endo Int'l PLC*,
    338 F.R.D. 446 (E.D. Pa. 2021) ............................................ 12

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
    2024 WL 1497110 (S.D.N.Y. Apr. 5, 2024) .......................... 10

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) .................................................. 8, 9

## Rules

Fed. R. Civ. P. 23(f) ....................................................................... 1

## INTRODUCTION

The Petition explained that this Court's immediate review is necessary to address several important questions about the "mismatch framework" announced in *Arkansas Teacher Retirement System v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 81 (2d Cir. 2023) ("*Goldman IV*"). The District Court's decision denying Plaintiff's motion for class certification is the first decision to apply the framework. Intervention is necessary now, before the District Court's highly questionable expansion of *Goldman IV* catches on.

Defendants' principal response is that intervention is unwarranted because the District Court's answers to the questions presented by the Petition were correct. *See* Respondents' Opposition to Petitioner's Rule 23(f) Petition ("Opp.") 14-17. That is wrong on its own terms, but it is also an insufficient reason to deny review. The questions presented will have recurring importance in this Circuit and only an authoritative decision from this Court can resolve them. The Court should provide that guidance now because the decision below is manifestly wrong and likely to lead other litigants and courts into error. Defendants acknowledge that the District Court interpreted this Court's decision in *Goldman IV*

to license trial judges to decide the central merits question in every securities fraud case—whether the defendant's statements were false—in the guise of addressing price impact. *See ibid.* (defending reasoning that if the statement is not false there is no "substantive mismatch" and therefore no price impact). That turns the mismatch framework on its head. *See infra*, Part I.

Defendants also try to brush aside the need for further guidance on when *Goldman IV*'s "searching review" is triggered, insisting it is required in every case. *See* Opp.11-12 (arguing it "would have been clear error for the district court ... not [to] conduct the 'searching review' about which the petition now complains, .... even assuming the 'mismatch' in specificity here was less severe than *Goldman*."). But the Court was clear that this framework is reserved for when the mismatch in genericness is so pronounced the scrutiny ordinarily applied at the class-certification stage is insufficient. *Goldman IV*, 77 F.4th at 102 ("a searching price impact analysis must be conducted where ... there is a *considerable* gap in front-end–back-end genericness") (emphasis added). That the District Court and Defendants believe special, heightened review applies in every case demonstrates the need for clarification. *See infra*, Part II.

## ARGUMENT

I.  **THIS COURT SHOULD GRANT INTERLOCUTORY REVIEW TO DECIDE WHETHER A DISTRICT COURT MAY DENY CLASS CERTIFICATION BECAUSE IT BELIEVES THE DEFENDANT'S STATEMENTS WERE TRUTHFUL AND THUS HAD NO PRICE IMPACT.**

The Petition explained that under precedent the Supreme Court reaffirmed in *Goldman*, courts cannot find a lack of price impact simply because they believe the plaintiff is wrong on the merits. *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 119, 122 (2021) (citing, *e.g.*, *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-68 (2013)). Instead, while *Goldman* clarified that courts should consider all *evidence* relevant to price impact, even if the evidence is probative of other merits issues as well, the Court also emphasized that this did not license courts to *decide* merits questions when assessing price impact. *Id.* at 124.

Defendants do not really dispute that the District Court decided there was no price impact because it concluded that Defendants' Minimum Standards Statement was not false. Although they try to argue the court was only deciding whether the statement was "forward-looking," they admit that the reason the court asked that question was to determine whether the "Detour announcement ... contradict[ed] the

3

front-end statement"—*i.e.*, whether the allegedly fraudulent statement was false. Opp.15. In so doing, the court not only decided the central merits question in the case, but did so by resolving a core factual dispute, displacing the jury. ADD22-23 (finding the "weight of the evidence supports Defendants' interpretation").

Defendants believe this is "precisely the type of inquiry that the *Goldman* and [*Goldman IV*] courts direct." Opp.14. If that is right, this Court should say so. But it is obviously not right. This Court's mismatch analysis focuses on disparities in *genericness*, not substance. *See Goldman IV*, 77 F.4th at 102 ("[A] searching price impact analysis must be conducted where (1) there is a considerable gap in front-end–back-end *genericness* ….") (emphasis added).

Nor is this an example of a court considering *evidence* that relates to falsity in order to decide some *other* question. Rather than consider *evidence* that might also go to a merits question, the District Court simply decided that because there was no fraud there was no price impact. To be sure, the court reached this conclusion in three steps: (1) because the statement was "forward-looking," it was true; (2) because it was true, there was a "substantive mismatch" between the allegedly false

statement and the corrective disclosure; and (3) because there was a "substantive mismatch," there was no price impact. ADD22-23. But that cannot disguise what really happened: The court disbelieved the allegations of fraud and concluded that without a false statement there can be no price impact. This is no different from ruling that because a statement is immaterial, it must have had no price impact—the precise line the Supreme Court and this Court have held that trial judges cannot cross. *See Goldman IV*, 77 F.4th at 81 ("*Goldman*'s mismatch framework requires careful trekking: district courts must analyze the price impact issue without drawing what might appear to be obvious conclusions for off-limits merits questions such as materiality.").

Having acknowledged how hard it is to respect this line, it is crucial for this Court to provide immediate clarity, lest other judges see the District Court's decision and view themselves as similarly authorized to decide core merits questions reserved for the jury in the guise of determining whether there is a "substantive" mismatch despite acknowledging no mismatch in genericness.

Defendants add that the District Court considered other factors too. *See* Opp.16-17. But they do not suggest that any of these other

considerations were determinative, *i.e.*, that the falsity error is not harmless. In all events, the court's consideration of other factors was legally erroneous as well, applying portions of the "searching" analysis this Court reserved for cases of significant mismatch in genericness, *Goldman IV*, 77 F.4th at 102, which the District Court acknowledged wasn't appropriate here because the mismatch in genericness did not meet this Court's threshold. *See* ADD21. Outside the context of considerably generic statements, those considerations cannot carry a defendant's burden to disprove price impact, and they do not here. *See* ADD23 (acknowledging that "analysts who covered the January 14, 2019 investor day referred to the Minimum Standards Statement," and that analysts who covered the Detour acquisition "did comment that Detour had higher costs than Kirkland," but noting they did not "refer[] back to the Minimum Standards Statement[]" specifically); ADD23-24 (finding persuasive Defendants' mining expert's opinion that if the Minimum Standards Statement referred to metrics "that must be met for Kirkland to consider a potential acquisition, he would not have expected a positive impact on Kirkland's stock price" (cleaned up)).

## II. THIS COURT SHOULD GRANT INTERLOCUTORY REVIEW TO PROVIDE GUIDANCE ON WHEN A STATEMENT IS SUFFICIENTLY GENERIC TO TRIGGER *GOLDMAN IV*'S "SEARCHING PRICE IMPACT ANALYSIS."

The Petition also explained that immediate review is needed to clarify what counts as a sufficiently generic statement to trigger the "searching price impact analysis" required under *Goldman IV*. That analysis, which puts a significant thumb on the scale in favor of finding no price impact, is reserved for times when "there is a *considerable gap* in front-end–back-end genericness." 77 F.4th at 102 (emphasis added).

Defendants' response is, again, that we are simply wrong on the merits. They appear to argue that there is no genericness threshold for triggering *Goldman IV*'s "searching" analysis, which seemingly must be applied in every case. *See* Opp.11 ("The petition is simply wrong that 'the need for a probing analysis' arises solely from the level of genericism of the statement—which no Court has ever held." (quoting Pet.18-19)); Opp.12 ("It thus would have been clear error for the district court … not [to] conduct the 'searching review' about which the petition now complains."). Again, if that is the law, this Court should grant review to make that clear because on its face, *Goldman IV* holds the opposite. *See* 778 F.4th at 102 ("[A] searching price impact analysis must be conducted

7

where (1) there is a considerable gap in front-end–back-end genericness … , (2) the corrective disclosure does not directly refer, as it did in *Waggoner*, to the alleged misstatement, and (3) the plaintiff claims … that a company's generic risk-disclosure was misleading by omission."); *id*. at 102-05.[1]

This Court was careful to cabin *Goldman IV*'s mismatch framework to cases that meet its exceedingly narrow criteria because that framework stands in considerable tension with the *other* half of the Supreme Court's decision in *Goldman* on the burden of persuasion. *Goldman* held that defendants bear the burden of persuasion (not just production) on price impact—rejecting the defendant's arguments that the burden is instead on plaintiffs to *prove* price impact once the

---

[1] Defendants' imply that *Waggoner* and *Vivendi* applied *Goldman IV*'s heightened scrutiny despite the absence of highly generic misstatements. *See* Opp.11. Those cases did not, precisely *because* they involved more specific front-end statements. *Waggoner v. Barclays PLC*, 875 F.3d 79, 89 (2d Cir. 2017) (perfect match because back-end disclosure reference front-end statement directly); *see Goldman IV*, 77 F.4th at 98 (holding that the "link between misstatement and disclosure was equally strong in *Vivendi*," even though corrective disclosure did not directly reference the earlier misstatements as in *Waggoner*, because "there can be little doubt that even those corrective disclosures directly rendered false the company's affirmative misrepresentations" (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016))).

8

defendant sets forth sufficient evidence to create a material dispute on the question. *See* 594 U.S. at 124-27. Accepting Defendants' argument here essentially places the burden of proving price impact back on the plaintiffs in nearly every case, and would thus "effectively negate *Halliburton II*'s holding that plaintiffs need not directly prove price impact in order to invoke the *Basic* presumption." *See id.* at 126 (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278-79 (2014)).

To the extent Defendants simply argue that whatever the threshold is, the mismatch here surpassed it, that is no basis to deny review either. The District Court's and Defendants' inability to articulate *why* the statements are sufficient to trigger the heightened scrutiny starkly illustrates why further clarification from this Court is needed. Otherwise, courts will continue to struggle to decide when to apply *Goldman IV* through clumsy comparisons between cases whose statements bear little in common. *See* Opp.11-12 & n.5 (comparing statements here to those in *Waggoner*, *Vivendi*, and *Goldman IV*). Indeed, Defendants do not dispute the Petition's explanation that even the M&A Statements were very detailed. *Cf.* Pet.17-18.

The concept of a "generic" statement and "mismatch" were largely invented in the *Goldman* litigation. There is no body of established law on which courts can draw for guidance about what degree of mismatch in genericness requires special scrutiny and what level is simply the product of the fact that corporate statements tend to address general issues and conditions, while corrective disclosures often take the form of detailed news reports. If judgments about the degree of genericness are to be effectively outcome determinative in a great many cases, this Court must provide further instruction on how trial judges should make that assessment, lest these important cases be arbitrarily decided based on nothing more than a particular district court's idiosyncratic sense of whether a statement was "too generic."[2]

---

[2] Other defendants, represented by some of the same counsel as Defendants here, are already preparing to brief the issue and will undoubtedly rely on the District Court's decision to inappropriately defeat class certification in another case pending in the Southern District. *See Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 2024 WL 1497110, at *25 (S.D.N.Y. Apr. 5, 2024) (report and recommendation granting in part plaintiffs' motion for class certification); *id.*, Doc.330, at 1 (Apr. 9, 2024) (seeking additional time to file objections because the "R&R represents only the second decision applying the Second Circuit's recent decision in [*Goldman IV*]" and defendant needed an extension "to ensure that the issues addressed in the R&R are comprehensively submitted to the Court.").

## III.  DEFENDANTS' OTHER ARGUMENTS LACK MERIT.

For the reasons above, the District Court's decision is highly questionable—another reason an immediate appeal is warranted. *See* Pet.20-28. Defendants' additional arguments against review are inapt.

First, Defendants argue that Plaintiff raised a different theory at class certification than in his complaint. Opp.12-13. Defendants made the same argument in their brief opposing class certification, *see* Doc.88, at 12-16, but the District Court did not accept it. As Plaintiff explained below, his "core allegation" has always been "that Kirkland misleadingly told investors it was focused on organic growth when, in reality, it was actively considering low-performing targets well below the Company's stated minimum standards." Doc.105, at 6. The complaint alleged that Defendants' statements were false because they misled the market to believe Kirkland was focused on growing internally and would only consider acquisitions that met performance metrics Detour failed, while actively negotiating a merger with Detour.

After discovery, it became clear that Kirkland had been targeting *several* mines for acquisition that failed its publicly stated performance metrics at the time of the misstatements. Plaintiff explained that

11

"evidence that Kirkland pursued subpar targets in addition to Detour[] only strengthens ... Plaintiff's claim that Defendants' statements were false when made." Doc.105, at 6. "[C]ourts ruling on class certification have routinely considered additional evidence of misrepresentations or corrective disclosures revealed in discovery that, like those here, may not have been explicitly alleged in the complaint but are consistent with the theory of the case." *Ibid.*[3] In denying certification, the District Court notably did not accept Defendants' waiver argument.

Second, Defendants suggest that immediate review is unwarranted because a final decision disposing of the case is imminent. Opp.20. But that is true in every "death knell" case: An appeal could be delayed until the case dies and a final judgment is issued, something that would ordinarily happen in relatively short order. Here, there is no reason to

------

[3] Citing and quoting, *e.g.*, *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 483 (E.D. Pa. 2021) ("The purpose of discovery ... is to allow a broad search for information which may aid a party in the preparation or presentation of his case. In doing so, the parties may expand on what has been pleaded in the complaint or answer." (cleaned up)); *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *23 (S.D.N.Y. Jan. 26, 2021) (certifying class after considering "additional misstatements" because they "clearly relate to the same theory of liability (here, inflation maintenance) and the same concealed and misrepresented information that is alleged").

believe that final judgment is especially imminent. Defendants note that summary judgment has been briefed, but there is no reason to think it will be decided in their favor (much less quickly so). Although the District Court resolved falsity in Defendants' favor, it acknowledged doing so by resolving a core factual dispute, something it could not do on summary judgment. *Compare Murphy v. Hughson*, 82 F.4th 177, 183 (2d Cir. 2023) ("genuine issues of material fact preclude" summary judgment), *with* ADD22-23 (finding that the "weight of the evidence supports Defendants' interpretation" of the Minimum Standards Statement).

## CONCLUSION

This Court should grant the Petition and set the case for briefing and argument.

Dated: April 29, 2024

Respectfully submitted,

/s/ Daniel Woofter

Christian Levis
LOWEY DANNENBERG P.C.
44 South Broadway
White Plains, NY 10601
14) 997-0500

Daniel Woofter
Kevin K. Russell
GOLDSTEIN, RUSSELL &
  WOOFTER LLC
1701 Pennsylvania Ave. NW
Suite 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Petitioner*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 29(d)(2)(C) because this document contains 2,599 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Office 365 Word in 14-point New Century Schoolbook LT Standard font.

Dated: April 29, 2024       <u>    /s/ Daniel Woofter    </u>
                                            Daniel Woofter

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2024, I caused the above document to be electronically filed with the Clerk of Court of the U.S. Court of Appeals for the Second Circuit by using the appellate ACMS system. I certify that all participants in this case are registered users of that system, and that service will be accomplished by that system.

Dated: April 29, 2024      \_\_\_\_\_/s/ Daniel Woofter\_\_\_\_\_
                                       Daniel Woofter